**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| WADE E. ALLEMENT, JR. | CIVIL ACTION |
| VERSUS | |
| AMERISTEP CORPORATION, ET AL | NO. 11-713-BAJ-CN |

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days from the date of service of this Notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. The failure of a party to file written objections to the proposed findings, conclusions, and recommendation contained in a Magistrate Judge's Report and Recommendation within 14 days after being served with a copy of the Report shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge that have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in chambers in Baton Rouge, Louisiana, January 26, 2012.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | |
|---|---|
| **WADE E. ALLEMENT, JR.** | **CIVIL ACTION** |
| **VERSUS** | |
| **AMERISTEP CORPORATION, ET AL** | **NO. 11-713-BAJ-CN** |

## MAGISTRATE JUDGE'S REPORT

This matter is before the Court on the Motion to Remand (R. Doc. 6) filed by plaintiff, Wade E. Allement, Jr. ("Allement"). The removing defendants, Ameristep Corporation ("Ameristep"), Primal Vantage Company, Inc. ("Primal Vantage"), and Tahsin Industrial Corp. U.S.A. ("Tahsin")(collectively "removing defendants"), have filed an opposition (R. Doc. 10) to Allement's motion.

## FACTS & PROCEDURAL BACKGROUND

Allement filed this suit in the 19th Judicial District Court, Parish of Pointe Coupee, State of Louisiana, on or about November 22, 2010, alleging that he sustained severe injuries as a result of a fall he suffered when he fell from a tree stand while hunting. Specifically, Allement contends that, while hunting, he was using an Ameristep Climbing Tree Stand when the cable holding the seated portion of the tree stand failed, causing him to fall backwards approximately fifteen (15) feet upon debris surrounding the tree. Allement contends that, after he fell, he was unable to move his legs and lower body, and he contacted his sister on his cell phone, who in turn called 911 for emergency assistance. The Pointe Coupee Sheriff's Office ("PCSO") was allegedly called at 13:47:23 p.m. According to Allement's allegations, the PCSO responded to the call via dispatch of

1

Detective Dwight Bordelon ("Detective Bordelon") of the PCSO's Water Patrol Division at 13:56:27 p.m. since Allement had fallen in an area where it was necessary to use watercraft to reach him. Detective Bordelon secured one of the PCSO's aluminum boats, which he attached to his two wheel drive pick-up truck. He allegedly arrived at the levee and attempted to launch the boat at 13:59:22 p.m., but his two wheel drive pick-up truck got stuck. According to the original petition, the PCSO unhooked the trailer and boat from Detective Bordelon's truck and reattached it to a four wheel drive vehicle. The boat was then launched, but the PCSO could not get the boat's motor to start, resulting in Detective Bordelon having to advise Louisiana Wildlife and Fisheries at 14:39:05 p.m. that an additional boat would be needed since the PCSO's boat would not start.

Thereafter, Wildlife and Fisheries launched their boat at 14:54:17 p.m. and proceeded to rescue Allement. Allement alleges that the delay between Detective Bordelon arriving at the levee at 13:59:22 p.m., the ultimate rescue of Allement by Wildlife and Fisheries at 15:05:35 p.m., and the removal of Allement via helicopter by Acadian Ambulance Services at 15:23:12 p.m., took over an hour, was an unreasonable delay, and resulted in his suffering an "unreasonable increase in his physical pain and suffering" and his "emotional pain and suffering" because he "lay helpless, incapable of moving, enduring the agony of never being rescued and him dying alone in the woods." *See*, R. Doc. 6-1, p. 2.

In his original petition, Allement named Ameristep, Primal Vantage, and Tahsin as defendants, asserting against them allegations relating to the defective tree stand (*i.e.*, claims of products liability, negligence, gross negligence, defect(s) in construction and/or composition, warnings defect(s), and breach of express warranties). Allement also named

as defendants Terral RiverService, Inc. ("Terral"), the owner of the land upon which he fell, and the PCSO, asserting claims of negligence against each of those defendants. Specifically, as to Terral, Allement alleges that it was negligent in the demarcation of its land, in maintaining and clearing hazards from its land that would pose an unreasonable risk of harm, and in failing to warn of such hazards. Allement contends that Terral was negligent in failing to mark its property by means of "signage, fencing, or other barriers," and as a result, he mistakenly hunted on Terral's property, believing it to be the property of George F. Neal.[1] Allement contends that such error resulted in his "erroneous stand placement and the resultant injury therefrom." *See*, R. Doc. 1-1, p. 18.

Relative to PCSO, Allement alleges that it was negligent in failing to maintain, inspect, and monitor its emergency response vehicles for use in the event of an emergency. As noted above, he alleges that the PSCO's delay in getting emergency aid and assistance to [him] led to his increased fear and anxiety and furthered the injuries that [he] had already sustained." *See*, R. Doc. 1-1, p. 19.

On October 21, 2011, Allement filed an Amended and Supplemental Petition for Damages ("amended petition"), which added supplemental facts relating to his causes of action against the removing defendants. He did not add or amend any facts relating to his allegations against Terral or PCSO. Also, on October 21, 2011, the removing defendants removed Allement's suit to this Court on the basis of diversity jurisdiction, alleging that the non-diverse defendants, Terral and PCSO, were improperly joined in this litigation and that

---

[1] According to the removing defendants' opposition to the present motion, at the time of the incident in question in this lawsuit, Allement was trespassing on a large, wooded parcel of land adjacent to the Mississippi River floodplain, which land was owned by Terral. *See*, R. Doc. 10, p. 1.

their Louisiana citizenship should therefore be ignored for purposes of determining whether diversity jurisdiction exists herein. Specifically, the removing defendants contend that Allement has no reasonable possibility of recovery against PCSO because that entity is immune from liability under La. R.S. 9:2798.1(B) and because any delay in rescuing Allement did not cause his vertebrae to break and had "absolutely no relation to the extent of his injuries." The removing defendants also argue that Terral was improperly joined because that entity is immune from liability under La. R.S. 9:2791 and because Terral had no duty to remove all debris from the land.

On November 20, 2011, Allement filed the present motion, seeking to have this case remanded to state court on the grounds that the removal was untimely-filed and that Terral and PCSO are properly joined defendants whose non-diverse citizenship destroys diversity jurisdiction.

## **LAW & ANALYSIS**

The undersigned agrees with Allement that removal of this matter was untimely, and as a result, this case should be remanded to state court. The deadlines for removal are set forth in 28 U.S.C. §1446(b). That provision provides that a notice of removal of a civil action shall be filed within thirty (30) days after a defendant receives, through service or otherwise, a copy of the initial pleading setting forth the claim for relief upon which such action is based. 28 U.S.C. §1446(b). Such provision further provides, in the second paragraph, that, if the case stated by an initial pleading is not removable, a notice of removal may be filed within thirty (30) days after receipt by the defendant, through service or otherwise, of a "copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.*

The removing defendants were served with Allement's original petition for damages by at least December 21, 2010, since that is the date that they filed their answer to the original petition. *See,* R. Doc. 101, p. 30. As mentioned above, Allement did not add or amend any allegations as to the non-diverse defendants, Terral and PCSO, in the amended petition filed on October 21, 2011. Thus, as to those non-diverse defendants, the amended petition did not provide any additional facts to support the removing defendants' contention that the non-diverse defendants were improperly joined, and the notice of removal was untimely, under the first paragraph of §1446(b), since it was filed well over thirty (30) days after the removing defendants were served with the original petition.

Although the removing defendants contend, in their opposition to the present motion, that their removal was timely-filed on October 21, 2011, under the second paragraph of §1446(b), because evidence obtained during their September 30, 2011 inspection of the accident site (which evidence allegedly "'completely' dispute[s]" Allement's allegations against Terral and PCSO)[2] constitutes an "other paper" from which they first ascertained that the case was removable based upon the fraudulent/improper joinder of the non-diverse defendants, the undersigned, like the court in *Harell v. Yokohoma Tire Corp.*, 2011 WL 1812785 (S.D. Miss. 2011), is not convinced that the evidence derived from the site inspection constitutes an "other paper" for §1446(b) purposes. In *Harell*, the plaintiff brought a wrongful death and products liability action, on behalf of a teacher who had been

---

[2] According to the removing defendants' opposition, the September 30, 2011 site inspection (which inspection had been previously delayed due to the flooding of the subject property by the Mississippi River) revealed evidence that the property was marked with signs identifying it as private property, where trespassing and recreational activities like hunting are forbidden, and that the tree limbs, logs, and other debris surrounding the tree in question are naturally-occurring and of the type that would be expected in a heavily wooded area like the property in question.

employed by the Jackson Public School District, against several diverse tire manufacturing companies and the non-diverse Jackson Public School District, the Mississippi Department of Education, and the Mississippi Department of Finance and Administration, after the teacher was killed in an automobile accident. The diverse defendants removed the case thirty-one (31) days after the first defendant was served on the basis that the non-diverse defendants had been improperly joined. The diverse defendants contended that the non-diverse defendants were immune from suit because, under state law, an employee of a governmental entity of Mississippi, such as the deceased teacher, is precluded from filing suit against any governmental agency if the plaintiff's employer provides Worker's Compensation benefits. The plaintiff filed a motion seeking remand on the basis that the removal was untimely since it occurred over thirty (30) days after service of the petition on the first defendant. The removing defendants asserted that the removal was timely because it was filed within thirty (30) days after they first ascertained from an "other paper" that the case was removable. Specifically, the removing defendants argued that their removal was filed within thirty (30) days of their first ascertaining records showing that Worker's Compensation benefits were paid to the plaintiff's decedent's estate. The removing defendants contended that, since the state law provision barring recovery against the non-diverse defendants hinged on coverage by Worker's Compensation, the Worker's Compensation documents were an "other paper," allowing them a new opportunity for removal.

The *Harell* court disagreed with the removing defendants, however. It noted that, while the Fifth Circuit has recognized that discovery documents can constitute "other paper" under the removal statutes in certain cases, those cases typically involve a complaint

6

between diverse parties that does not allege an amount in controversy, and the plaintiff later provides deposition testimony or makes a demand revealing that the necessary amount-in-controversy is satisfied. *Harell*, *5, citing *Eggbert v. Britton*, 2007 WL 870364 (5th Cir. 2007) and *Addo v. Globe Life and Accident Ins. Co.*, 230 F.3d 759 (5th Cir. 2000). The *Harell* court further noted that, in those circumstances, an "'other paper' must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction." *Id.*, citing *Addo*, at 761 (citing *S.W.S. Erectors v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996). The court went on to hold that the Workers' Compensation documents obtained by the removing defendants through their own independent investigation should not be treated as "other paper." It explained that the Fifth Circuit has typically found "other paper" to be "documents, admissions, depositions, etc., which provided information the defendant could not easily obtain through investigation." *Id.*, citing *Jernigan v. Ashland Oil, Inc.*, 989 F.2d 812 (5th Cir. 1993)(where a co-defendant's answer to the complaint was considered "other paper" under the removal statutes because it provided key information about the legal relationships between the parties which was not public record); *Addo*, at 762 (where the Fifth Circuit deemed a post-complaint demand letter from the plaintiff's attorney to the defense to be "other paper" which established that the amount in controversy met the minimum required for diversity jurisdiction).

Finally, the *Harell* court found that the removing defendant knew from first service that the non-diverse defendants were "potentially immune" from suit, and since the Worker's Compensation documents "only provided confirmation of that theory," the removing defendant's "late investigation of [the] issue should not open a new window for

7

removal." The court therefore found that the removal, which was only one (1) day outside the thirty (30) day removal period set forth in the first paragraph of §1446(b), was untimely.

The undersigned finds the *Harell* court's analysis relating to the Worker's Compensation documents persuasive and concludes that the evidence obtained as a result of the removing defendants' site inspection in the present case does not constitute an "other paper" for §1446(b) purposes. Although the Fifth Circuit has held that the "voluntary act of the plaintiff" requirement does not apply in the fraudulent joinder-removal context,[3] the undersigned nevertheless agrees with the *Harell* court's finding that the types of documents that the Fifth Circuit has considered to be "other papers" are pleadings, admissions, depositions, demand letters, and other documents of that nature,[4] as opposed to documents and evidence that result from independent investigations by removing defendants.[5] [6] If the discovery ascertained from the site inspection, in fact, disproves

---

[3] *Schaefer v. Kodiak Mfg., Inc.*, 2011 WL 1656081 (E.D.La. 2011); *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529 (5th Cir. 2006).

[4] *Schaefer*, at *3 (noting that, even if a voluntary act is required in the improper joinder-removal context, the Fifth Circuit has held that a plaintiff's deposition testimony qualifies as such, and the plaintiff's deposition testimony in that case therefore constituted an "other paper" triggering a second removal period).

[5] *See, Ameen v. Merck & Co., Inc.*, 2007 WL 1026412 (5th Cir. 2007)(holding that a deposition may "constitute[ ] a new paper or event that changed the facts regarding the removableness of the case" and that the removing defendants' contention that the plaintiff had no basis for recovery against the non-diverse defendants relied upon facts first revealed in the plaintiff's deposition testimony. Removal was therefore held to be timely because it was filed within thirty (30) days of the removing defendants becoming aware, through that deposition testimony, that the case might be removable); *Crockett*, at 533 (holding that removal on the basis of an unappealed state court order severing the claims against improperly joined defendants constituted an "other paper" triggering a new thirty (30) day removal period); *Badon v. R J R Nabisco Inc.*, 224 F.3d 382 (5th Cir. 2000)(The removing defendants receipt of a copy of the co-defendant's answer was considered an "other paper" triggering the removal period under the second paragraph of §1446(b)); 61 Baylor L. Rev. 296 (2009)(noting that examples of the types of documents that the Fifth Circuit has considered "other paper" are deposition transcripts, interrogatories, and requests for disclosure); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489 (5th Cir. 1996)(noting that deposition of plaintiff's president constituted "other paper" for purposes of removal, while an estimate of the value of the case given by plaintiff's counsel in a telephone conversation with defense counsel did not constitute an "other paper");

Allement's claims against Terral and Allement, as the removing defendants contend, the approach the removing defendants should have taken was to file motions to dismiss the non-diverse defendants in state court based upon the evidence ascertained through the site inspection, and if those motions were granted, dismissing the non-diverse defendants from the case, the removing defendants could then remove the case based upon those dismissal orders, which orders most certainly constitute "other papers" for purposes of §1446(b). Given that the removal statutes are to be construed strictly against removal and in favor of remand[7] and that there is no jurisprudence supporting the assertion that evidence like that obtained from the site inspection can serve as an "other paper" for removal purposes,[8] the undersigned finds that the thirty (30) day removal period should be calculated from service of the original petition, rather than from the September 30, 2011 site inspection. Because the notice of removal was not filed within thirty (30) days of service of the original petition,

---

*See also, Dominguez v. Peek*, 2010 WL 1658550 (S.D.Ala. 2010)(noting that, while courts have not articulated a single test for identifying what constitutes "other paper" under 28 U.S.C. §1446(b), certain documents have been held to qualify, including responses to requests for admissions, settlement offers, interrogatory responses, deposition testimony, demand letters, and emails estimating damages).

[6] Courts have construed the "other paper" requirement to include documents from state court proceedings, such as discovery depositions, interrogatory answers, and "any 'official papers' filed with the 'action sub judice' or given under 'oath' in connection with the action." *Oehlman v. Wal-Mart Stores East, LP*, 2006 WL 1043465 (N.D.Ind. 2006)(citing several cases); *Morrow v. Daimlerchrysler Corp.*, 451 F.Supp.2d 965 (N.D.Ill. 2006)("papers that are part and parcel of the State Court proceedings having their origin and existence by virtue of the State Court process" were construed to be "other papers" under §1446(b)). The evidence that the removing defendants obtained through the site inspection in the present case does not fit within that construction.

[7] *See, Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 106 (5th Cir. 1996)

[8] The removing defendants also have not asserted that any amended pleading, motion, or order gave them notice that the case became removable within the thirty (30) days prior to their October 21, 2011 removal.

9

it was untimely-filed, and remand is warranted.⁹  Following remand, the state court can resolve the removing defendants' arguments that Allement lacks viable claims against Terral and PCSO under state law.¹⁰

Finally, like in *Harell*, the undersigned alternatively finds that the removing defendants could have detected from the allegations in the original petition that Terral and PCSO were "potentially immune" from suit and could have removed on that basis.¹¹  It was not necessary for the removing defendants to conduct a site inspection to confirm their immunity theories (or to obtain evidence "'completely' refuting" plaintiff's theories of recovery, as they contend)¹² prior to removal on the basis of improper joinder.  The standard for removal on the basis of improper joinder is based upon when a defendant has enough information to ascertain, at least arguably, that a non-diverse defendant has been improperly joined.  *See,* 18 No. 12 Federal Litigator 9 (2003), citing *Simpson v. Union Pacific Railroad Co.*, 282 F.Supp.2d 1151 (N.D. Cal. 2003).¹³ ¹⁴  Accordingly, this serves

---

⁹ *See, Delaney v. Viking Freight, Inc.*, 41 F.Supp.2d 672 (E.D.Tex. 1999), citing *Royal v. State Farm Fire & Cas. Co.*, 685 F.2d 124, 127 (5ᵗʰ Cir. 1982)(A failure to timely file a notice of removal is a defect that requires remand to state court).

¹⁰ *See, Whiteley v. Wolverine Harley-Davidson, Inc.*, 2010 WL 3564262, *2, n.1 (E.D. Mich. 2010).

¹¹  The removing defendants concede that both of the plaintiff's theories of recovery against PCSO and Terral, as pled in the original complaint, were "very 'suspect'" and "very questionable;" yet, they contend that they could not remove on the basis of improper joinder until they had conducted the necessary discovery to fully refute those theories of recovery.  *See*, R. Doc. 10, p. 27.

¹² *See*, R. Doc. 10, p. 3.

¹³ In *Simpson*, the removing defendant's improper joinder argument was based upon a theory that the non-diverse defendant, a school district, had no duty under state law to ensure the safety of students traveling to and from school.  The court found that such argument required no factual basis other than the allegations set forth in the complaint and that the removing defendants could have presented their argument for removal based on fraudulent joinder of the school district upon first receiving the complaint,

"as it was their burden to do," rather than waiting until after the state district court sustained the school district's demurrer and dismissed the school district from the case.

Similarly, in *Whiteley v. Wolverine Harley-Davidson, Inc.*, 2010 WL 3564262 (E.D. Mich. 2010), the court found that, even if the removing defendants could establish a case of fraudulent joinder, they were nevertheless time-barred from doing so because their fraudulent joinder arguments were based upon facts apparent in the original complaint served more than thirty (30) days before removal. According to the court, "[a]n examination of the notice of removal, along with the two, virtually identical complaints, disprove[d] the notion that the defendants could not 'first ascertain[ ]' a route to federal jurisdiction until after [the plaintiff] filed the first amended complaint and discovery took place'." *Id.*, at *2. For example, the removing defendants argued that the non-diverse defendant could not be liable in negligence because it was only a dealer of Harley-Davidson motorcycles and therefore did not perform any acts creating liability. However, the court found that the initial complaint did not state anything different about the non-diverse defendant's role, and the removing defendants therefore could have raised that argument in a removal notice as soon as they were served with the initial complaint. *Id.* The court concluded that, because the removing defendants could have made their improper joinder arguments when they received the original complaint, the time to remove had expired, and the court lacked subject matter jurisdiction over the case. It further noted that, if the claims against the non-diverse defendant were legally insufficient, the removing defendants should file a motion to dismiss the claims against the non-diverse defendant in state court).

[14] As mentioned above, the removing defendants' contentions that Terral and PCSO are immune from liability are based upon La. R.S. 9:2791 and La. R. S. 9:2798.1(B) respectively. La. R. S. 9:2791 provides that an owner of a premises (that is not used principally for a commercial, recreational enterprise for profit) owes no duty of care to keep the premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing, or boating or to give warning of any hazardous conditions, use of, structure, or activities on such premises to persons entering for such purposes, whether the hazardous condition or instrumentality causing the harm is one normally encountered in the true outdoors or one created by the placement of structures or conduct of commercial activities on the premises. In the original petition in this matter, Allement alleges that Terral has owned the property where the incident occurred for numerous years in addition to other properties in and around the Mississippi River flood plain. He further alleges that Terral was aware of the hazards that resulted from the annual rise and fall of the Mississippi River and its deposit of foreign objects upon its property and was aware of or should have been aware that the land it owned and maintained had been used by numerous individuals for a multitude of activities including hunting. Allement further contends that, for years, Terral has been aware of individuals coming onto its property due to its lack of warnings/signage and has acquiesced in same. Finally, Allement alleges that Terral had a duty to warn of unreasonably dangerous conditions on its property and to inspect its property to ensure that the land was maintained and in a reasonable safe state for use by hunters. Based upon such allegations, the removing defendants had sufficient facts before them at the time they were served with the original petition to at least assert that Terral is arguably entitled to immunity based upon La. R.S. 9:2791 since it is asserted that Terral is the owner of a premises being used for the non-commercial (and non-profit), recreational purpose of hunting and that someone was injured allegedly due to a hazardous condition on that property. It was not necessary for the removing defendants to actually inspect the property to assert that immunity argument. Furthermore, considering that the property in question was flooded by the Mississippi River overflow in the interim between the accident date and the date of the inspection, it is highly unlikely that the state of the debris surrounding the tree was the same on both dates. *See*, Removing defendants' opposition, R. Doc. 10, p. 4 (noting that the location of the accident tree was under thirty feet of water when initial attempts were made to schedule an inspection of the site). Thus, the inspection probably contributed little, if any, information with respect to Allement's claims of debris around the tree in question.

Similarly, the removing defendants had sufficient facts before them, based upon the original

as an alternative basis for finding removal untimely in this matter.

## RECOMMENDATION

For the above reasons, the Motion to Remand (R. Doc. 6) filed by plaintiff, Wade E. Allement, Jr., should be **GRANTED**, and this matter should be **REMANDED** to the 18th Judicial District Court, Parish of Pointe Coupee, State of Louisiana, for further proceedings.

Signed in chambers in Baton Rouge, Louisiana, January 26, 2012.

**MAGISTRATE JUDGE CHRISTINE NOLAND**

---

petition, to assert that the PCSO was immune from liability based upon La. R.S. 9:2798.1(B), which provides that "[l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking or discretionary acts when such acts are within the course and scope of their lawful powers and duties." In the petition, Allement alleges that the PCSO is liable for failing to maintain, inspect, and monitor its emergency response vehicles for use in the event of an emergency, which failure allegedly caused or contributed to his injuries. The Louisiana Supreme Court has adopted a two-part test for determining when such discretionary function immunity applies. *Shepard v. Bradford*, 98-172 (La.App. 3 Cir. 11/4/98), 721 So.2d 1049, 1052. First, a court must determine whether the government's action was a matter of choice. *Id.* If the action was not a matter of choice because some statute, regulation, or policy prescribed a specific course of action to follow, then the discretionary function exception does not apply, and there is no immunity. *Id.* If, on the other hand, the action involved an element of choice or discretion, then the court must determine whether that discretion is the type that is shielded by the exception because it is grounded in social, economic, or political policy. *Id.* Those actions that are based on public policy are protected by La. R.S. 9:2798.1. It has been held that decisions concerning the patrol practices of a city police department are a matter of choice because no statute, regulation, or policy proscribes the times or locations for patrols. *Shepard*, at 1052. The removing defendants rely upon that case in their present opposition for the assertion that the PCSO is immune from liability because, similarly, decisions regarding the maintenance and inspection of emergency response vehicles is a matter of discretion and is not dictated by statute, regulation or policy. Such arguments could have been raised based upon the allegations in the original petition. Furthermore, it is highly unlikely that the September 30, 2011 site inspection contributed any information relative to the immunity argument concerning the sheriff's office.